UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

 DANIEL L. GERKEN,

                                        Plaintiff,

       vs.                                              1:25-CV-00484
                                                        (MAD/PJE)
ADA NORA BAKER, JUDGE RYAN MULLAHY,
and TOWN OF SCHODACK,

                                        Defendants.

_____

APPEARANCES:                             OF COUNSEL:

DANIEL L. GERKEN
West Sand Lake, NY 12196
Plaintiff, *pro se*

MURPHY BURNS GROUDINE LLP        STEPHEN M. GROUDINE, ESQ.
407 Albany Shake Road
Loudonville, New York 12211
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On April 18, 2025, Plaintiff Daniel-Lee Gerken commenced this action, *pro se*, against

Defendants Judge Ryan Mullahy ("Defendant Mullahy"), ADA Nora Baker ("Defendant Baker"),

and Town of Schodack (the "Town"). *See* Dkt. No 1. Plaintiff brings claims for alleged

violations of his Fifth, Sixth, and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983 and

related state law. *See id.* On June 20, 2025, and October 8, 2025, Defendants submitted motions

to dismiss pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil

1

Procedure.  *See* Dkt. Nos. 15, 29.  Plaintiff opposes the motions.  *See* Dkt. Nos. 18, 31.  For the reasons that follow, Defendants' motions are granted.

## II. BACKGROUND

### A.    Factual Background[1]

On October 11, 2024, Plaintiff was charged under New York Penal Law with Unlawful Imprisonment in the Second Degree, Harassment in the Second Degree, and Endangering the Welfare of a Child.  *See* Dkt. No. 1-2 at 2.[2]  While these charges were pending, Plaintiff moved to dismiss on the basis that, among other things, the state court lacked jurisdiction.  *See* Dkt. No. 1 at ¶ 10.

On November 6, 2024, Plaintiff appeared before Defendant Mullahy in the Town of Schodack Justice Court in relation to the criminal charges.  *See id.* at ¶ 8.  Plaintiff appeared in court again on February 5, 2025.  *See id.* at ¶ 11.  During the February 5, 2025, proceeding, Plaintiff argued, among many other things, that his arraignment in East Greenbush was improper. *See* Dkt. No. 1-5 at 4.[3]  Defendant Mullahy denied Plaintiff's motion to dismiss and distributed his decision to the parties.  *See* Dkt. No. 1 at ¶ 11; Dkt. No. 1-5 at 2.

Plaintiff contends that Defendant Mullahy failed to address the jurisdictional questions he raised, "including the question of whether the court had proper jurisdiction of Plaintiff's case given Plaintiff's status as an American State National and the issues of diversity of citizenship plus the fact that the alleged crimes did not happen in the Town of Schodack."  Dkt. No. 1 at ¶ 13.

---

[1]  Unless otherwise noted, the facts recited herein are drawn from the complaint and assumed true at this juncture.

[2]  Unless otherwise noted, citations are to the pagination generated by CM/ECF, the Court's electronic filing system.

[3]  Attached to the complaint are transcripts of the proceedings before Defendant Mullahy.  *See* Dkt. Nos. 1-4, 1-5, 1-6.

Between bouts of argument on the record, Defendant Mullahy attempted to schedule a trial for the criminal charges pending against Plaintiff.  *See* Dkt. No. 1-5 at 2.  During the February 5 proceeding, Plaintiff also informed Defendant Mullahy and Defendant Baker that he intended to bring a civil suit against them.  *See id.* at 3, 5.  Plaintiff appeared before Defendant Mullahy again on April 2, 2025—although the only purpose of this proceeding appears to have been to set a trial date, Plaintiff reiterated his many arguments related to dismissal of the criminal charges on jurisdictional grounds.  *See, generally*, Dkt. No. 1-6.

After his motion to dismiss was denied, Plaintiff filed a motion for reconsideration and several discovery motions.  *See* Dkt. No. 1 at ¶ 16.  These motions were summarily denied.  *See id.*

On April 18, 2025, Plaintiff filed the instant action.  *See* Dkt. No. 1.  Plaintiff attaches several exhibits in his pleading, including: transcripts of his appearances at Town of Schodack Justice Court, as well as criminal charging documents from the Town of Schodack on which it appears Plaintiff have written, "I do not consent to these proceedings" and "I do not wish to contract with 'Town of Schodack' and I do not accept this offer to contract."  Dkt. No. 1-1; *see* Dkt. Nos. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, and 1-11.

Generally, Plaintiff alleges violations of due process and equal protection based on judicial misconduct by Defendant Mullahy for his denial of Plaintiff's motions and scheduling a trial "in the face of blatant violations of CPL 245" and against Defendant Baker for withholding evidence.  Dkt. No. 1  Plaintiff claims the Town is liable for these alleged constitutional violations pursuant to *Monell*.  *See id.*  Plaintiff seeks injunctive relief and damages in the amount of $50,000,000.  *Id.* at 17.

Specifically, the complaint can be liberally construed to state the following claims: (1) judicial misconduct by Judge Mullahy in violation of Plaintiff's due process rights; (2) a due process violation against Defendant Baker for failure "to provide automatic discovery in violation of Criminal Procedure Law (CPL) § 245"; (3) an equal protection and due process claim for "Violation of the Plaintiff's Rights as an American State National" under the Fourteenth Amendment; (4) a *Monell* claim against Town of Schodack under 42 U.S.C. § 1983; (5) a fraudulent concealment claim against Defendant Baker pursuant to the Fifth, Sixth, and Fourteenth Amendments and state law; and (6) a "Violation of Plaintiff's Rights to Fair Discovery" claim against Defendant Mullahy under CPL 245 pursuant to "New York State Law and the U.S. Constitution."  Dkt. No. 1 at ¶¶ 21-37.

In lieu of an answer, Defendants have moved to dismiss pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 15, 29.  In their motions, Defendants argue: (1) Defendant Mullahy is entitled to dismissal of all claims against him on the basis of judicial immunity; (2) Plaintiff cannot hold the Town liable under *Monell*; (3) *Younger* abstention requires the court to decline to exercise subject matter jurisdiction; (4) any claims brought under New York State law must be dismissed for failure to file a notice of claim; (5) Defendant Baker is entitled to dismissal of all claims against her on the basis of prosecutorial immunity; (6) Defendant Baker was never served and, therefore, the Court lacks personal jurisdiction over her; (7) punitive damages must be stricken; and (8) leave to amend would be futile.  *See* Dkt. Nos. 15-1, 29-1.

**III. DISCUSSION**

A.    **Legal Standard**

"'A court faced with a motion to dismiss pursuant to both Rules 12 (b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.'" *Kumpf v. N.Y. State United Tchrs.*, 642 F. Supp. 3d 294, 304 (N.D.N.Y. 2022) (quoting *Mann v. N.Y. State Ct. of Appeals*, No. 21-CV-49, 2021 WL 5040236, *3 (N.D.N.Y. Oct. 29, 2021)). "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([*i.e.*,] subject-matter jurisdiction)." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). The court "may consider affidavits and other materials beyond the pleadings to

resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). In resolving a motion to dismiss, a court may also "'consider 'matters of which judicial notice may be taken.'" *Greenblatt v. Gluck*, No. 03-CV-597, 2003 WL 1344953, *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "'integral'" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678

6

(citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Twombly*, 550 U.S. at 558, 570.

As Plaintiff is proceeding *pro se*, the Court must review his allegations under "a more lenient standard."  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003).  The Court must "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  Thus, "a document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citations omitted).

## B.      Judicial Immunity[4]

Defendants contend that all of Defendant Mullahy's alleged actions were performed while presiding over Plaintiff's state criminal court proceedings and, therefore, he is entitled to absolute judicial immunity.  *See* Dkt. No. 15-1 at 5-9.  In opposition, Plaintiff argues that Defendant Mullahy is not entitled to judicial immunity because he "refused to rule on motions with findings

---

[4]  As noted, Defendants raise *Younger* abstention as a basis for dismissal.  *See* Dkt. No. 15-1 at 11-12.  Ordinarily, the Court would address abstention as a threshold issue.  However, the complaint does not request that the Court interfere with ongoing state court proceedings; Plaintiff brings claims for constitutional violations that allegedly occurred during certain proceedings, but does not seek this Court's intervention directly.  *See, generally*, Dkt. No. 1.  And, according to Plaintiff, the criminal prosecution underlying this action has concluded.  *See* Dkt. No. 31 at 4. Therefore, the Court finds *Younger* inapplicable and will proceed directly to the merits.

of fact," "failed to establish jurisdiction," and "ignored constitutional arguments."  *See* Dkt. No. 31 at 4.

"Absolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.'"  *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).  "Absolute immunity for a judge performing his or her judicial functions 'is conferred in order to [e]nsure "that a judicial officer, in exercising the authority vested in him shall be free to act upon his own convictions, without apprehension of personal consequences to himself."'"  *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 124 (2d Cir. 2020), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)).  "Entitlement to absolute immunity does not depend on the individual's title or on the office itself ."  *Id.* (citation omitted).

"[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i. e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i. e.*, whether they dealt with the judge in his judicial capacity."  *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (footnote omitted).  "Judicial acts principally involve adjudication of particularized, existing issues."  *Libertarian Party of Erie Cnty.*, 970 F.3d at 124. "Judicial immunity is overcome in only two circumstances: (1) 'a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'"  *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, *5 (2d Cir. June 7, 2022) (summary order) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).

8

A judge's actions are in "absence of all jurisdiction" when the court has no "'statutory or constitutional power to adjudicate the case.'" *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Judicial actions made in error or "in excess of his authority" do not defeat judicial immunity. *Mireles*, 502 U.S. at 12-13 (citing *Stump*, 435 U.S. at 356).

The Second Circuit has explained what "complete absence of all jurisdiction" means in the context of judicial immunity as follows:

> The Supreme Court in *Bradley* described the difference between "excess of jurisdiction" and "clear absence of all jurisdiction" by example: If a probate court, the jurisdiction of which is limited to wills and estate settlement, should conduct a criminal trial, jurisdiction over the subject matter would be entirely wanting, and, as this lack would necessarily be known to the court, the judge would not be entitled to judicial immunity. If, on the other hand, a judge of a criminal court were to try a party for a nonexistent offense or sentence a convict to a term longer than that permitted by law, that judge would be entitled to the protection of the judicial immunity doctrine since those acts would be "particulars for his judicial consideration." . . . This distinction has been utilized to aid in the determination of whether judicial immunity should obtain, with "the scope of the judge's jurisdiction [to be] construed broadly."
>
> Because scrutiny of a judge's state of mind would hinder the adjudicatory process in the very manner that the judicial immunity doctrine is designed to prevent, a judge will be denied immunity only where it appears, first, that the judge acted in the clear absence of jurisdiction, and second, that the judge must have known that he or she was acting in the clear absence of jurisdiction.

*Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir. 1988) (internal citations omitted).

Furthermore, a district court cannot grant injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was

violated or declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (citation and internal quotation marks omitted).

Here, Plaintiff's allegations against Defendant Mullahy stem from his adverse rulings on Plaintiff's motions during the pendency of the underlying criminal charges. *See* Dkt. No. 1 at ¶ 34. Specifically, Plaintiff alleges that Defendant Mullahy failed to conduct a proper arraignment, denied Plaintiff's motion to dismiss "without adequately addressing the jurisdictional questions raised, including the question of whether the court had proper jurisdiction over Plaintiff's case given Plaintiff's status as an American State National and the issues of diversity of citizenship plus the fact that the alleged crimes did not happen in the Town of Schodack[,]" and did not "provid[e] any proofs of claim requested in the Quo Warranto or evidence that this court had personal or subject matter jurisdiction over the matter." *Id.* at ¶¶ 8-13. Plaintiff also claims that Defendant Mullahy violated his due process rights by denying his motion for reconsideration as well as other motions related to discovery. *See id.* at ¶¶16-17.

Although Plaintiff disagrees with Defendant Mullahy's decisions, his alleged actions were entirely within the scope of his jurisdiction as Town of Schodack Justice. *See Brady v. Ostrager*, 834 Fed. Appx. 616, 618 (2d Cir. 2020) (summary order) ("'The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature'") (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)). Indeed, Plaintiff readily admits Defendant Mullahy was acting in his capacity as Town of Schodack Justice during the relevant time period. *See id.* at ¶ 34. And, even if Defendant Mullahy erred in denying Plaintiff's motions, erroneous application of the law is an act in excess (but not in the absence) of jurisdiction and, thus, does not deprive a judge of immunity. *See Stump*, 435 U.S. at 357 (1978)

10

("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority") (citation and footnote omitted).

Plaintiff's claims against Defendant Mullahy are entirely frivolous to the extent Plaintiff contends that he is not subject to the jurisdiction of New York State courts because he has "withdrawn from the U.S. Citizen franchise," Dkt. No. 1-10 at 2, or "as an American State National, with citizenship under the laws of their state of origin, [he is] not subject to the jurisdiction on of the corporate United States," Dkt. No. 1 at ¶ 4.  "Contrary to [P]laintiff's contentions, 'sovereign citizens,' 'like all citizens of the United States, are subject to the laws of the jurisdiction in which they reside.'"  *Paul v. New York*, No. 13-CV-5047, 2013 WL 5973138, *3 (E.D.N.Y. Nov. 5, 2013) (dismissing complaint *sua sponte* as factually and legal frivolous where allegations were based on the theory that the plaintiff was "not subject to the jurisdiction of the New York [S]tate criminal courts") (citations omitted).[5]

As for the allegations regarding improper arraignment, it appears from the complaint and attached documents that Defendant Mullahy did not arraign Plaintiff and only received the case after five other judges were compelled to recuse themselves.  *See* Dkt. No. 15-1 at 7.  Regardless, even if Defendant Mullahy had arraigned Plaintiff improperly, absolute immunity would still apply.  *See Preston v. Beers*, No. 3:07-CV-972, 2007 WL 9772281, *2 (N.D.N.Y. Dec. 18, 2007) (applying absolute immunity to judge's acts in presiding over arraignment and sentencing).

---

[5] Plaintiff's belief that he is entitled to relief appears to rest on theories commonly raised by sovereign citizens.  As a court in this District has explained (in a case involving this Plaintiff), "'sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior.'"  *Gerken v. Cap. One Fin. Corp.*, No. 1:24-CV-1423, 2024 WL 5378958, *2 (N.D.N.Y. Nov. 27, 2024) (quoting *United States v. Ulloa*, 511 Fed. Appx. 105, 106 n.1 (2d Cir. 2013)).  Sovereign citizen theories are "frivolous" and "have been consistently rejected by federal courts."  *Muhammad v. Smith*, No. 3:13-CV-760, 2014 WL 3670609, *2 (N.D.N.Y. July 23, 2014) (citing *Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir .2008)).

To the extent Plaintiff alleges Defendant Mullahy had no jurisdiction because the criminal charges stemmed from conduct in another town, such allegations are entirely conclusory and insufficient to establish that Defendant Mullahy acted in the absence of all jurisdiction. *See Basile v. Connolly*, 513 Fed. Appx. 92, 94 (2d Cir. 2013) (summary order) ("To the extent Basile alleges that Justice Connolly lacked jurisdiction because the matter before her was not active at the time she presided over the allegedly improper proceedings, his statements are conclusory and insufficient to establish that she acted in the absence of all jurisdiction"); *see also Stump*, 435 U.S. at 356 ("[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge"). Cursory review of New York State law reveals that criminal actions may be transferred between local courts within a County upon the recusal of all the judges in the local court with original jurisdiction. *See* N.Y. Crim. Proc. Law § 170.15(3).

In sum, Defendant Mullahy's challenged conduct occurred during the course of the underlying state court proceeding and any actions he took in that case were judicial acts for which he is afforded absolute judicial immunity. *See, e.g.*, *Burdick v. Oswego Cnty.*, No. 5:15-CV-00353, 2015 WL 6554515, *7 (N.D.N.Y. Oct. 29, 2015). Accordingly, the § 1983 claims against Defendant Mullahy are dismissed with prejudice under Rule 12(b)(6) for failure to state a claim. *See Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (holding that "claims . . . barred by absolute judicial immunity . . . [are] correctly dismissed under Rule 12(b)(6)"); *see also Kelly v. Guzy*, No. 20-CV-0721, 2022 WL 160305, *1 n.2 (N.D.N.Y. Jan. 18, 2022) (explaining that "dismissal[s] based on the doctrine of judicial immunity" are properly dismissed with prejudice).

## C.    Prosecutorial Immunity

Defendants contend that the § 1983 claims against Defendant Baker must be dismissed as barred by absolute prosecutorial immunity because the claims are premised on acts Defendant

12

Baker undertook in her function as an advocate for the People of the State of New York.  *See* Dkt. No. 29-1 at 6-7.  Plaintiff argues that Defendant Baker is not entitled to persecutorial immunity because her "conduct falls squarely outside protected functions."  Dkt. No. 31 at 5.

It is well-established that "prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.'"  *Hill v. City of New York*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  In determining whether absolute immunity attaches, court "apply a 'functional approach,' looking at the function being performed rather than to the office or identity of the defendant."  *Id.* at 660 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)); *see also Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ("The appropriate inquiry . . . is not whether authorized acts are performed with a good or bad *motive*, but whether the acts at issue are beyond the prosecutor's authority") (emphasis in original); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (finding that prosecutorial immunity protects prosecutors from liability under § 1983 "for virtually all acts, regardless of motivation, associated with his [or her] function as an advocate").

Applying this well-established principle to the present matter, it is clear that Plaintiff's claims against Defendant Baker are subject to dismissal.  These claims stem entirely from Plaintiff's criminal prosecution, during which, the complaint alleges, Defendant Baker withheld evidence.  *See* Dkt. No. 1 at ¶¶ 18, 21-24, 35.  Because these acts were conducted in furtherance of Defendant Baker's prosecutorial duties during the judicial phase of the criminal proceeding against Plaintiff, Defendant Baker is immune from suit.  *See, e.g.*, *Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022) ("[A]bsolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial.  The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity

13

attaches to his function, not to the manner in which he performed it") (quotation and emphasis omitted).; *Barrett v. U.S.*, 798 F.2d 565, 571-72 (2d Cir. 1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can be fairly characterized as closely associated with the conduct of litigation or potential litigation . . .") (citation omitted).

Accordingly, the § 1983 claims against Defendant Baker are dismissed with prejudice pursuant to Rule 12(b)(6). *See Lee v. Heggen*, No. 1:25-CV-1248, 2026 WL 523062, *1 (N.D.N.Y. Feb. 25, 2026) (finding it appropriate to treat "a dismissal based on the doctrine of prosecutorial immunity as one for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (which may be rendered with prejudice), and not as one for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1)") (collecting cases).[6]

## D.    *Monell* Liability

Plaintiff also names the Town, a municipality, as a Defendant. *See* Dkt. No. 1. "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'" *Dougal v. Lewicki*, No. 1:23-CV-1167, 2023 WL 6430586, *10 (N.D.N.Y.

---

[6] In light of the fact that the claims against Defendant Baker must be dismissed based on absolute immunity, it is not necessary to reach her argument that service of process was insufficient. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) ("Although we traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, . . . that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues. In cases involving 'multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action,' we have proceeded directly to the merits on a motion to dismiss, . . . and we do so here") (internal citations omitted); *Close v. Bedford Cent. Sch. Dist.*, No. 23-CV-4595, 2024 WL 3427213, *14 (S.D.N.Y. July 16, 2024) ("Because all of Plaintiffs' federal claims are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim, the Court need not reach the parties' Rule 12(b)(5) arguments concerning insufficient service of process . . . .") (collecting cases).

Oct. 3, 2023), *R&R adopted*, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012)). "Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it 'may not be held liable on a theory of respondeat superior.'" *Id.* (quoting *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000)); *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978)). An "official policy or custom" of the municipality can be shown in several ways:

> (1) a formal policy officially endorsed by the municipality . . .; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question . . .; (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials . . .; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with the municipal employees . . . .

*Dorsett-Felicelli, Inc. v. Cnty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (internal citations omitted).

"[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, *13 (S.D.N.Y. Mar. 26, 2015). "There must at least be an affirmative link between the [municipality's policy] alleged, and the particular constitutional violation at issue." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

Critically, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a

15

municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).  Once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct." *Id.*

Plaintiff contends that the Town violated his constitutional rights by failing to properly train, supervise, or discipline Defendants Mullahy and Baker.  *See* Dkt. No. 1 at ¶ 37.  However, as discussed, Plaintiff has failed to state a claim that a person, who is not entitled to absolute immunity, deprived him of a constitutional right.  Thus, Plaintiff has failed to state an underlying constitutional violation sufficient to support municipal liability.  *See Dees v. Zurlo*, No. 1:24-CV-0001, 2024 WL 1053237, *14 (N.D.N.Y. Mar. 11, 2024), *R&R adopted*, 2024 WL 2291701 (N.D.N.Y. May 21, 2024) ("A fundamental requirement of a *Monell* claim is the establishment of an underlying constitutional violation . . . .  In the present case the Court is recommending the dismissal of all the federal claims and, as such, also recommends that any *Monell* claim be likewise dismissed") (citations omitted).

Even if Plaintiff had alleged an underlying constitutional violation, he has failed to identify or allege any facts regarding the existence of a municipal policy or custom of the Town which caused the alleged constitutional violations.  *See Boyde v. New York*, No. 5:16- CV-555, 2016 WL 3573133, *4 (N.D.N.Y. May 19, 2016), *R&R adopted*, 2016 WL 3580768 (N.D.N.Y. June 28, 2016) (recommending dismissal of the plaintiff's complaint against Onondaga County and the City of Syracuse because the plaintiff "failed to identify or allege any facts showing the existence of a municipal policy or custom . . . which caused his alleged [constitutional violations]"); *see also Meyers v. Becker*, No. 1:23-CV-173, 2023 WL 4424128, *4 (N.D.N.Y.

May 31, 2023), *R&R adopted*, 2023 WL 4196914 (N.D.N.Y. June 27, 2023) (concluding that the plaintiff's complaint was "insufficient to allege a claim for municipal liability" because the "[p]laintiff does not state what Schoharie County's alleged policy was or how it negatively impacted [him]").

For these reasons, Plaintiff has failed to state a municipal liability claim against the Town.

**E.     State Law Claims**

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3). "'[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims . . . .'" *Allen v. City of New York*, No. 24-2589-CV, 2025 WL 3152723, *2 (2d Cir. Nov. 12, 2025) (summary order) (quoting *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 103 (2d Cir. 1998)).

Here, given the absence of a plausible federal claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time over any state law claims that may be reasonably construed from the complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over any potential state-law claims contained in Plaintiff's complaint and dismisses any such claims without prejudice.

**F.    Leave to Amend**

Generally, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'" *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, the claims against Defendant Mullahy are barred by judicial immunity, the claims against Defendant Baker are barred by prosecutorial immunity, and, thus, the claims against the Town fail for lack of an underlying constitutional violation. Plaintiff's claims could not be cured by better pleading. *See Gerken v. Gordon*, No. 1:24-CV-435, 2024 WL 5001402, *7 (N.D.N.Y. Dec. 6, 2024), *aff'd*, No. 24-3336, 2025 WL 2847429 (2d Cir. Oct. 8, 2025) ("[C]ourts often dismiss claims barred by immunity without leave to amend because better pleading cannot cure the deficiency, *i.e.*, amending a complaint does not eliminate a party's immunity"). Accordingly, the Court finds that amendment would be futile.

## IV. CONCLUSION

After carefully considering the parties' filing, the record in this matter, and the applicable law, the Court hereby

**ORDERS** that Defendants' motions to dismiss (Dkt. Nos. 15, 29) are **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED** as follows:

(1) Plaintiff's constitutional claims, brought pursuant to 42 U.S.C. § 1983, are **DISMISSED with prejudice** for failure to state a claim; and

(2) the balance of the complaint is **DISMISSED without prejudice but without opportunity to amend** for lack of subject matter jurisdiction; and the Court further

**ORDERS** that the Clerk of the Court is directed to enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:  March 12, 2026
       Albany, New York

Mae A. D'Agostino
U.S. District Judge